### WILLIAM TODD, JR. *versus* ROBERT B. WHITNEY.

The jury are to decide matters of fact, and those only.  And when the facts are found by uncontradicted and unquestioned testimony, or by agreement, or by special verdict, their legal effect is matter of law to be determined by the Court.

When the intention of the parties are clearly and fully disclosed by the facts proved, neither Court nor jury can properly disregard them, and infer and substitute other and different intentions.

But where the intention is not clearly or necessarily disclosed by the proof of the facts, and that is to be ascertained to enable the Court to determine the legal effect of the facts coupled with the intention, it is the province of the jury to find the intention or purpose as a matter of fact.

THIS was an action of assumpsit to recover the amount of a promissory note for three hundred and fifty dollars, dated Feb. 11, 1845, given by defendant to plaintiff, payable on the first day of June, then next, with interest.

The general issue was pleaded and joined.    Plaintiff read in evidence, the depositions of William Boardman, Robert M.

Todd, and Salem Laflin and the note of hand declared on.

The defendant read in evidence the depositions of Stephen Hill, Jr. and James Sprague, a bond of plaintiff's given to defendant, of even date with said note, for a deed of a certain sawmill, and the written admission of plaintiff in relation to the insurance of the mill, — and contended that. as there had been such a change in the character and value of the property as the consideration for the contract to purchase, for which the note in suit in this action was given, that the defendant would not by law be obliged to complete the purchase, and that the plaintiff could not collect the notes given for the purchase money. The defendant further contended, that the evidence contained in the deposition of Hill, of the offers of plaintiff to sell the mill, and after the destruction of the mill to sell the privilege, was evidence from which the jury might infer, that the contract between the plaintiff and defendant, in regard to the sale and purchase of the mill, had been rescinded, or that the plaintiff had claimed to assert his right to treat the contract for a deed as broken on the part of the defendant and his rights under it at an end, — and in either case that the plaintiff could not by law enforce the collection of the note in suit in this action.

SHEPLEY J. presiding at the trial, instructed the jury, that if they believed all the evidence in the case, the defence was not made out, and they must return their verdict for the plaintiff for the amount of the note. — And the jury returned their verdict accordingly. If the foregoing instruction of the Judge was incorrect, the verdict is to be set aside and a new trial granted, otherwise there is to be judgment on the verdict. The said depositions and note and admission of plaintiff, are made a part of this case; the depositions of Boardman and Hill to be copied and the other evidence may be referred to without copying.

Boardman's deposition was as follows: —

" I, William Boardman, of lawful age, do depose and say, that I wrote and witnessed the annexed note, and saw Whitney

sign it, the annexed note was first payment mentioned in bond given by Todd to Whitney.

"*Cross.* — This note was given for mill purchased by Whitney of Mr. Todd. The bond now shown me was written and witnessed by me and I saw Mr. Todd sign it. Sometime after the fire, my son, George Boardman, requested me to take care of what iron could be found, belonging to said mill, and put it away for whomsoever it might concern. — I did as he requested and had the iron put into a box and put into the store near toll bridge. This was done in consequence of Whitney's having bought and abandoned the mill, and if some one did not take care of it, the iron would be carried off. My son is concerned in business with Mr. Todd, but on what terms exactly, I do not know. — I have been employed by Mr. Todd as clerk.

"*In chief.* — Mr. Whitney told me he purchased said mill of Todd, and said he had got to make some repairs. — I should think for the occupier to keep said mill in repair, that four hundred dollars would be a fair rent for her.

"William Boardman."

Copy of note : —

"$350,00.          Saint Stephen, February 11th, 1845.

"For value received, I promise to pay William Todd, Jr. or order, three hundred and fifty dollars on the first day of June next with interest. '          "Robert B. Whitney.

"Witness, William Boardman."

Copy of deposition of Stephen Hill, Jr. : —

"I, Stephen Hill, Jr. of lawful age, do depose and say, Mr. William Todd, the latter part of November last, offered to sell me the stream saw, in the mill, called the Providence, or I do not exactly know what they called her name, but it was the stream saw of the mill on the lower dam, which was burned last winter. He did not at this time mention any thing about any sale, or trade, made to Mr. Robert B. Whitney. He offered to sell me the mill and secure me a lease of a lot of land up river, and he made me an offer for the mill, without the lease, for two thousand or twenty-two hundred dollars. I am

not sure which price. There was nothing said about the time of giving me possession of the mill, he was to have given me four years for payment, equal instalments. I did not make up my mind to take her but was at a stand. I think I should have taken her this spring, had she not burned. I should have taken her at offer for the mill alone. We were talking something about the privilege this spring. Mr. Todd and myself had some talk about trading, he did not at this time say any thing to me about Mr. Whitney's having any claim on the privilege or mill.

" *Question by defendant's attorney.*—Did or not Mr. Todd in any of the conversations you had with him, say that he was under any obligation to sell the mill or privilege, to Robert Whitney ?

" *Answer.*—No sir, he did not.

" *In chief.*—There was no trade between myself and Mr. Todd, there were no written propositions made — this mill was the half of the mill owned with Columbus Bacon, who owned the shore saw, it being a double mill.

" Stephen Hill, Jr."

*J. Granger,* for the defendant.

The case finds the presiding justice instructed the jury, " that if they believed all the evidence, the defence was not made out, and they must return their verdict for the plaintiff.

Was this instruction correct ?

I contend that it was not, because it should have been left to the jury, upon the evidence, to say whether or not the plaintiff had claimed to treat the defendant's rights under the bond as forfeited, for non-performance on his part, or whether or not the contract had, by mutual consent, been rescinded.

There was evidence for the jury to pass upon, tending to establish the positions of the defendant. The inferences to be drawn from that evidence were for the jury. The evidence was not objected to as inadmissible. The effect to be given to it, was entirely within the province of the jury. They might well infer from the evidence, that the contract was rescinded.

Why else was the plaintiff endeavoring to sell the property? as we find from the testimony of Hill that he was.

Besides, owing to an inevitable accident, the plaintiff cannot perform the contract on his part. Why then should he be permitted to enforce it on the part of the defendant? The mill is not in existence and was not when the plaintiff's action was commenced. The mill was the principal inducement for the purchase.

If a contract be made for the purchase of property and before the conveyance is actually made, a material change in the property occur, without any fault on the part of the vendee or bargainee, such as the destruction of a considerable part of the property by fire, the purchaser cannot be compelled to complete the purchase. And if he has made payments on account of it, he may recover back such payments. 2 Kent's Com. 468.

Would there not be a most manifest injustice in compelling the defendant to pay his notes and take a deed of the *ruins* of a piece of property, principally destroyed by fire, while the plaintiff pockets the value of property through a policy of insurance.

The plaintiff has rebuilt the mill and sold it to a third person. It cannot be denied that he claimed to treat the contract with defendant as at an end; whether by mutual consent or otherwise is immaterial.

Now according to the authorities, if the defendant should be compelled to pay the note in suit in this action, he could recover it back. *Freay* v. *Decamp*, 15 S. & R. 227; 1 Metc. and Perk. Dig. 126. In *Brinley* v. *Tibbets*, 7 Greenl. 73, to prevent circuity of action, the court ordered that "judgment on default should not be entered, until the plaintiff placed on the files of the court, a deed of the land expressly for the use of the defendant." Upon the same principle, why should not the court in this case withhold judgment for the plaintiff altogether, as the plaintiff has disabled himself to perform the contract on his part.

If it be said that the defendant had the use of the mill a

Todd *v.* Whitney.

portion of the year, the answer is, that if he had any beneficial use of it, over and above what he expended in repairs, which he denies, the plaintiff has a right of action against him to recover a compensation for such use and occupation ; and may and probably will enforce it, even if he should recover the amount of the note sued in this action. The use of the mill constituted no part of the consideration for the note. If the consideration of the note has failed, the action must fail with it. The use of the mill cannot be brought in to prop it up. The defendant will be prepared to meet the claim for the use of the mill, when it shall be legally before the court.

*Fuller*, for the plaintiff.

1. The court did not err, in instructing the jury, that if they believed " *all the evidence,*" the defence was not made out.

It was a question of *law* for the court, and not of *fact* for the jury to determine, whether, the contract had been rescinded, upon " *all the evidence,*" there being no conflicting testimony in the case.

The jury could legally do no more, than believe *all the evidence.*

*All the evidence,* includes not only what the direct testimony tended to prove, but also, all legal inferences, which might legitimately be drawn from that testimony.

The law of the case, arising from all the evidence, falls entirely within the province of the court, and this line of distinction, is supposed to be very plainly delineated. 1 Cowen, 345.

Important contracts, affecting the realty, are neither to be made or rescinded by inferences; to be drawn from mere loose, hypothetical conversations, between third persons, resulting in no action.

I am not aware of any india-rubber, or sort of extension table power, which a jury possess, of drawing out important and material facts, out of certain other facts proved, in the absence of any testimony tending to prove the desired inferential facts.

2. Was the court correct in their instructions?

1845, February 11, is the date of bond and note in suit, being first note due; 1845, June 1, is the day the note became due; 1845, June 16, date of the writ; 1846, March, mill was burnt. The defendant's counsel is mistaken in his facts, when he says, " the mill was not in existence, when plaintiff's suit was commenced."

The case no where discloses, that the plaintiff has sold the mill, or done any act, to put an end to the contract; but on the contrary as late as the time when the mill was burnt, he studiously avoided doing any act, which might be construed as an *entry* for breach of performance. The mill irons were taken care of after the fire, " for the benefit of whom it might concern."

3. Is the destruction of the sawmill, more than a year after the contract of purchase, by inevitable accident, and almost a year after the first note became due, and suit thereon, to defeat plaintiff's right to recover any portion of the consideration?

The bond was sufficient consideration for the notes.

The mill itself, even if new, would not constitute more than half the consideration — the privileges and land would be worth more than the mill itself, to say nothing of irons.

I do not find the doctrine cited in defence, in 2 Kent, 468. But in page 370, I do find in Equity, " but if there be no ingredient of fraud, and the purchase is not seized, the insufficiency of title is no ground for relief against security given for the purchase money, or for rescinding the contract and claiming restitution of the money." " The party is remitted to his remedies at law, on his covenants to insure his title." When the defendant pays up his notes, it will be ample time to discuss the question, now prematurely raised. Judge Kent, in this connection, notices our own decision. 1 Greenl. 352.

The case cited from Pennsylvania, I have not seen. I do not perceive the applicability of the case he cites from the 7th of Greenl. to the present case. I think the case of *Manning*

v. *Brown*, 1 Fairf. 49, very much in point for the plaintiff. I also cite 13 Johns. R. 359 ; 14 Johns. R. 363.

The opinion of the Court was drawn up by

SHEPLEY J. — It is insisted, that the Court ought not, by its instructions, to have withdrawn the matters relied upon in defence from the consideration of the jury. The jury are to decide matters of fact and those only. When the facts are found by uncontradicted and unquestioned testimony, or by agreement, or by special verdict, their legal effect is matter of law, to be determined by the Court. Usually the intentions of parties are clearly and fully disclosed by the facts proved ; and in such case neither Court nor jury can properly disregard them, and infer and substitute other and different intentions. There are many cases, however, in which the intention is not clearly or necessarily disclosed by proof of the facts. As in criminal cases, whether property be taken furtively or a wound be inflicted with an intention to kill, will not necessarily be disclosed by proof, that the property was taken, or that the wound was inflicted. So in civil actions, proof of certain acts or declarations might not disclose whether they were performed or made with an intention to defraud or deceive. In such cases, when the proof of the facts does not disclose the intention or purpose, and that is to be ascertained to enable the Court to determine the legal effect of the facts, coupled with intention, it is the province of the jury to find the intention or purpose, as a matter of fact.

In this case there being no contradictory testimony, it was, under the instructions, received as proof of the facts stated in it. There was no intention or purpose not disclosed by the facts to be ascertained, and thereby to be made an additional fact, to enable the Court to determine their legal effect.

The grounds of defence presented, and which it is insisted were incorrectly withdrawn from the consideration of the jury, will be found to present only questions of law.

The first is in substance, whether the defendant would be relieved from his contract to purchase, and from the payment

of his notes, by the change in the character and value of the property occasioned by the subsequent destruction of the mill by fire. There is no additional fact to be found. It is most clearly a question to be decided by the Court. The defendant had received a valuable consideration for the notes in the bond obliging the plaintiff to convey the estate to him upon payment of them. That consideration had not been impaired or varied by the destruction of the mill. He was in no condition to inquire, whether the plaintiff could or could not perform, until he had performed on his own part. Then he would be entitled to a conveyance or to damages to be recovered by a suit upon his bond. Whether the plaintiff had contracted to sell to another, or whether the property had been destroyed by the elements, was in a legal sense immaterial to him, until he had by his own performance become entitled to a conveyance. *Eaton* v. *Emerson*, 14 Maine R. 335. There is very little of similitude between the present case and one, where the parties to the contract of sale and purchase supposed property to be in existence at the time, which had in fact been before destroyed.

· The second ground of defence was, that the contract for the sale and purchase of the mill had been rescinded. The facts being established by proof, this also was a question to be decided by the court. The jury were not entitled to infer it. It would not be rescinded by proof of the intentions of the parties, unless those intentions had been made effectual by proof of their acts or declarations. The facts stated in the deposition of Stephen Hill, Jr. would have no tendency to prove, that the contract had been rescinded. Those acts took place after the defendant had failed to make his first payment, and after this suit had been commenced to enforce it. The plaintiff might, without its having any effect to rescind the contract, endeavor to make sale of the estate to another, being satisfied that the defendant's rights, if any be had, should be ascertained by a suit upon the bond.

The third ground of defence, that the defendant would be relieved from the payment of his notes by the assertion on

the part of the plaintiff of a "right to treat the contract for a deed broken on the part of the defendant and his rights under it at an end," presents surely only a legal proposition arising out of the facts proved. If it were to be decided, as it is contended that it should have been, the effect would be, that the defendant might avoid the payment of his note by refusing to perform, and thereby forfeiting all rights under the contract, if the plaintiff would insist upon his legal rights.

If judgment must be entered for the plaintiff, the counsel for the defendant desires, that it should be delayed, that the defendant may have an opportunity to file a bill in equity for relief. He appears to have occupied the mill one year before it was destroyed by fire. A witness has stated, that a reasonable rent for it during that time would be $400. It does not appear, that the defendant had paid any part of the purchase money. The note in suit is for $350. The Court does not perceive, that he is in any danger of suffering loss, should he be compelled to pay the amount of this judgment.

*Judgment on the verdict.*